STRAFFORD, FEBRUARY TERM, 1823.

## THE TOWN OF MEREDITH *vs.* ALEXANDER P. LADD.

The office of constable is a public elective office, and a sale of it by the town is
contrary to sound policy.
A note given to secure the consideration, agreed to be paid for said office, is void.

THIS was assumpsit on a promissory note, dated April 9th,
1817, for $13,50. The parties agreed, that the defendant
was chosen constable for the town of Meredith, in March
1815, in consideration of his agreeing to pay said town for
the office, the sum of $13,50, and that the note now in suit,
was given to secure that consideration. The plaintiffs were
to become nonsuit, or the defendant defaulted, according to
the opinion of the court on the above facts.

*Orne,* counsel for the plaintiffs.

*Everett,* for the defendant.

WOODBURY, J. The sale of any elective office of a pub-
lic nature is contrary to sound policy. See statutes 5th
& 6th Edward 6th & 20th Edward 3d & 4th Henry 4th:
*Bac. Ab. "Office"* F. *Noy,* 102.—*Moor,* 781.—*Hawk. P. C.*
67 *ch.*

Meredith
*vs.*
Ladd.

The reasons are, that personal merit ought to be the sole passport to office ; that any other criterion tends to discourage virtue, talents and industry ; that an election influenced by money is not in itself free ; that an officer chosen on this ground,is tempted to extortion and fraud, for a remuneration of what he bestows for the appointment, and that when he, who can serve best, is elected to a public trust, the rights and liberties of the people will all in time be literally " knock- " ed off to the highest bidder." *Hawk. b.* 1, *c.* 67, *s.* 3. The rule as to every public office should be inflexible, *detur digniori.* 8 *D. & E.* 92, *Blackford vs. Preston.*

Our own legislature has never passed any statute on this subject, probably on the presumption we were yet too pure to require one, or were already sufficiently guarded by the principles of the common law. Their delicacy and views as to such practices, however, are apparent in our statute of June 24, 1813,(1) which prohibits the gift of even " liquor to the voters" " with a view to influence the election."— This is probably a step beyond the common law, since by the 20th Edward 3d, justices were forbidden to accept from suitors " fee or robe," but might " take meat and drink of " *small* value." *Com. Di.* " *Office*," J.

(1) I N. H.
Laws 252.

The office of constable, as well as that of sheriff, was once both judicial and ministerial. 4 *Inst.* 126.—*Com. Di.* " *Officer*," *D.* 1. They both now partake of only the latter character ; but they are elective and of a public nature. Though constables are chosen by town corporations, yet these corporations are public ; the duties of the office concern not only all residents, but those who belong elsewhere, if passing through the town and exposed to arrest, or if having claims against those residents in the town, and all precepts, civil or criminal, which emanate from single magistrates, are directed to constables. 1 *N. H. Laws* 98.—2 *Chitty Cr. Law* 682.

The present case then is not like *Godleot's*, in 4 *Leon.* 33, where it was held that the sale of a bailwick of a hundred was legal. For though the report omits to state, whether the sale was by the tribunal, or person empowered to make the

original appointment; or by one bailiff to another; or on what terms; yet it says, that such an office doth not concern in "the administration of justice, nor is it an office of trust."—But here the office of constable is an office of trust; many important duties are devolved upon it, bonds are executed for fidelity, and in some places the income from it is very considerable. It concerns the administration of justice, also, because both *ex-officio* and by precepts, a constable is empowered to arrest criminals under certain circumstances and by execution to seize either the person or property of small debtors. A bailwick is in England sometimes owned in fee, and could then be sold like other property.(1) Or if in the above case it was sold by the sheriff, who generally appoints bailiffs over hundreds as well as special bailiffs,(2) it was probably, like the office of deputy sheriff, sold on terms established by law, or for a certain portion of the actual fees received, and not for a gross sum. 6 *Mod.* 234, *Godolphin* vs. *Tudor.—Willes* 575, *note* S. C.—2 *Salk.* 463.

The case last mentioned is in fact not so much a sale as a gift by the sheriff to his deputy of a certain portion of the fees, on condition that the deputy perform the services and account for the residue of the fees. The fees all belong to the sheriff, and the deputy only acts instead of him and on his responsibility; while the fees of the constable never belonged to the town, the constable does not act instead of the town, nor is the town responsible for his misfeasance.

But should even a deputy sheriff agree to pay the high sheriff, as in this case, a gross sum at all events for leave to exercise his office within certain limits, the contract would be void. *Bac.* " *Officer,*" *D.*—1 *Hen. Bl.* 331, *Garforth vs. Fearon.*—2 *Salk.* 466, *Gulliford vs. De Condonell.*

Now by 3d George I., a bailiff can neither sell, farm or buy his office under a severe penalty.(3) The practice, which gave rise to the note now in controversy, is not we trust very general and probably sprung not from corrupt notions, but the great competition in some towns, to obtain the office of constable merely on account of its profits. But the practice cannot be justified upon principle, and the plaintiffs must become　　　*Nonsuit.*